FILED
03 SEP 24 PM 1:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

EVELYN GROCE,

Plaintiff,

vs. CASE NO. CV-02-J-2407-NW

FRANKLIN COUNTY, ALABAMA,

Defendant.

ENTERED
SEP 24 2003

**MEMORANDUM OPINION**

Pending before the court is the defendant's motion for summary judgment (doc. 22), to which the plaintiff filed an opposition. The defendant thereafter filed a reply. The court has considered the motions, evidence and arguments submitted by the parties in support of their respective positions.

## I. FACTUAL BACKGROUND

Plaintiff commenced this action on September 30, 2002 by filing a complaint alleging the defendant discriminated against her and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by failing to promote her to a vacant position in February, 2001.

In the light most favorable to the plaintiff, the facts of this case are as follows:

27

The plaintiff began working for the Franklin County Department of Revenue in 1991 as an appraisal clerk. Complaint, ¶ 5, defendant exhibit 3. She has filed three EEOC charges against the County, on March 18, 1999, January 3, 2000, and February 5, 2001, alleging various acts of discrimination based on race. Defendant exhibit 3. The February 5, 2001, charge asserts among other things, that the plaintiff was denied a promotion because of her race and her previous charges of discrimination. *Id.*

The position in question, that of personal property/appraiser ("PPA"), became available in December, 2000, when Joyce Smith announced she would be leaving. Warhurst depo. at 23; plaintiff depo. at 167-169; Jackson depo. at 65; plaintiff exhibit 1. The Revenue Commissioner, Jacky Warhurst, stated he had not yet decided whether to run for re-election, and therefore did not make any immediate decisions on filling the position. Warhurst depo. at 21-22, 26, 27-28. Plaintiff, Kathy Morgan and Leah Williams submitted letters of interest.[1] Defendant exhibit 4; Warhurst depo. at 27; plaintiff depo. at 178; plaintiff exhibit 2. The position was posted on February 7, 2001, in accordance with County policy, but no one else applied.[2] Jackson depo. at 86; plaintiff exhibit 3. Warhurst then decided not to run for re-election and not to act

[1]Jackson wanted Leah Williams placed in the PPA job while Warhurst thought Kathy Morgan should have it. Jackson depo. at 70-71.

[2]At the time this position was posted, the plaintiff had already submitted her third EEOC charge, asserting she did not receive this position. Defendant exhibit 3.

on any vacancies, preferring to allow whomever was elected next to fill the vacancies. Warhurst depo. at 40, 43-44, 51. He made this decision in spite of the fourteen months lag time between the election and the new Commissioner taking office.[3] *See e.g.*, plaintiff depo. at 67, 190. To date, the position has not been filled. Jackson depo. at 108.

Because the PPA duties have to be done, Jean Jackson, Chief Clerk of the Revenue Department, had Leah Williams Morgan ("Williams") perform the personal property functions of the position. Plaintiff depo. at 181. Williams was not given a promotion, a new job title, or a raise. Warhurst depo. at 37-38; Jackson depo. at 90. Williams, had been assisting Smith for the previous two years and therefore was familiar with the position. Jackson depo. at 66-67, 70-71, 78. Williams left in 2002 and Smith was rehired, at the bottom of the pay scale.[4] Warhurst depo. at 22; plaintiff

---

[3]Warhurst testified he does nothing on a daily basis, sometimes appearing at the office once a week, sometimes less. Warhurst depo. at 14-16. In fact, he has gone weeks without appearing in the office. Plaintiff depo. at 176. Thus, his Chief Clerk, Jean Jackson, is "the boss." *Id.* at 15. In the last election, his opponent "run against me saying that I wouldn't stay in the office. He put it in the paper. My moral conduct was bad because I'd drink a beer with anybody and I wouldn't go to the office. And that's what he run on against me, and it didn't work." *Id.* at 58-59.

Warhurst's most recent election resulted from the 1997 merger of the Tax Assessor's office and the Tax Collector's office into a Department of Revenue, headed by a Revenue Commissioner. Plaintiff depo. at 68-69. Prior to this merger, Warhurst was the Tax Collector and Larry Prince was the Tax Assessor. *Id.* at 63. The plaintiff was employed in the Tax Assessor's office. *Id.* at 64. The new Revenue Commissioner will take office October 1, 2003.

[4]Smith now makes about $3.00 an hour less than plaintiff. Plaintiff depo. at 183,185. Anybody who leaves the County's employ is rehired at the bottom of the pay scale should he or she wish to return. Plaintiff depo. at 184; Jackson depo. at 43.

depo. at 182-184; Jackson depo. at 116. Since that time, Smith and plaintiff have been performing the duties of the PPA position, but no one has been placed into that job. Plaintiff depo. at 163, 166, 185. A hiring freeze has been in effect since February, 2003, causing numerous open positions. Jackson depo. at 166-168.

The PPA position may have entailed a pay cut for the plaintiff had she been "promoted" to that job. Warhurst depo. at 48-49. The starting pay for the PPA job is $7.76. Jackson depo. at 72. The plaintiff assumed it would be more money because Smith made more than she did. Plaintiff depo. at 169-170, 173. Warhurst stated the plaintiff was qualified for that position, or any other, because "she's smart. She's probably the best employee that I have in the position she – she can do three times more work than anybody else." Warhurst depo. at 54.

Jackson repeatedly asked Warhurst about filling the PPA position, and he kept telling her ""I'll get to it." Warhurst depo. at 63; Jackson depo. at 87. Jackson does not have authority to hire, fire or give raises. *Id.* at 44.

The plaintiff never told Warhurst she thought Jackson was discriminating against her. Warhurst depo. at 34. The plaintiff accused Jackson of harassing her as far back as 1994, when Jackson became her supervisor.[5] Plaintiff depo. at 42-48, 71.

---

[5]This, as well as retaliation, were the subject of plaintiff's second EEOC charge, dated January 3, 2000. Plaintiff depo. at 126, 129, 131, 138-139. This Charge was resolved through mediation. Plaintiff depo. at 139.

Jackson also spoke to her in an unruly manner, beginning in 1996 or 1997.[6] *Id.* at 73-75. The plaintiff also asserts she is the only one who ever gets written up. Plaintiff depo. at 78, 83. She complained to Warhurst about a white employee, Tassa Lowery, needing to be written up, and Warhurst announced he was going to "wipe the slate clean." *Id.* at 105-108. This removed all write-ups against all employees. However, plaintiff states this would have been Lowery's second write-up. *Id.* at 110-111. The plaintiff and Jackson have "had words back and forth to each other." Plaintiff depo. at 78-80.

The plaintiff further alleges that, after she complained that she never got to go to any training classes, she was signed up for one without her knowledge. Plaintiff depo. at 94. The plaintiff did not attend this class because she was told about it too late and had other things to do. *Id.* at 95-96. Additionally, she informed Jackson and Warhurst it was inappropriate for her to attend such a training while her EEOC charge was pending. *Id.* at 319-320. She was also put under a surveillance camera.[7] *Id.* at 97. The plaintiff states she spoke with Warhurst about her problems with Jackson,

---

[6]The plaintiff has kept detailed records of day to day events at her job since 1994 or 1995. Plaintiff depo. at 272. These include detailed logs of when other employees were coming, going, and eating lunch. *Id.* at 280-281.

[7]This was included in the plaintiff's March, 18, 1999 EEOC charge. Plaintiff depo. at 119. Although other cameras were placed in various locations, the plaintiff asserts only the one in her office actually worked. Plaintiff depo. at 119-120. This EEOC charge was resolved through mediation. Plaintiff depo. at 124-125.

and he suggested she transfer to another department. Plaintiff depo. at 99-100. However, she asked for two transfers to the Probate Office and did not get either of them. *Id.* at 99. She states her complaints to Warhurst were in 1998 or 1999. *Id.* at 100. While he did nothing about her complaints, she cannot say it was due to her race. *Id.* at 102-103.

The plaintiff filed her third EEOC Charge on February 5, 2001.[8] Plaintiff depo. at 152. It alleges her work area had no heat. *Id.* at 153. Plaintiff complained about the lack of heat to Jackson, who went to Nell Bedford, Chief Clerk of the County Commission office, to get heaters purchased. *Id.* at 156, 158-159. Additionally, a heating company was sent to investigate and drained some pipes, which helped. *Id.* at 157-159. The heat has since been fixed. *Id.* at 160.

The third charge alleges the plaintiff was not given specific tasks to perform.[9] Plaintiff depo. at 160. Although the plaintiff cannot remember what this referenced, she thought it was unfair that she was not allowed to help with collections. *Id.* at 161-162. The plaintiff alleges that she was told she would not get assistance that she

---

[8]After filing her third EEOC charge, the plaintiff complained to the EEOC about the investigator assigned to investigate her charge, stating she treated the plaintiff harshly and harassed her. Plaintiff depo. at 242. The EEOC employee in question is a black woman. *Id.* at 243-244. The plaintiff accused her of "willful and wanton misconduct." Defendant exhibit 7.

[9]Although much of this charge, and plaintiff's grievances with Jackson, concern disparate treatment, the plaintiff's complaint makes claims **solely** for race discrimination and retaliation in failing to promote the plaintiff.

thought she might need when she got a computer due to being behind from not having a computer.[10]  *Id.* at 163-164.

The plaintiff's third charge further states that, "On or about January 1, 2001, I was not promoted to position personal property appraisal ... for which I have applied." Defendant exhibit 3.  The plaintiff wrote a letter on January 8, 2001, to Jackson requesting the PPA position.  Plaintiff depo. at 174-175, 268-269.  The plaintiff asked when interviews would be held, and Jackson responded each time that it was up to Warhurst. *Id.* at 175.  Warhurst would say he knew he needed to get the position filled, and "just brush it off." *Id.* at 177.  The plaintiff bases her claim that not receiving the PPA position is discrimination on her observation that "[t]hey've never held a job –waited to fill a position that long.  The County Commissioner's never waited – they posted jobs and within six months of interviewing, you know who's got the job." *Id.* at 192.  The plaintiff asserts she has not gotten the PPA position because of her race and her previous charges of discrimination. *Id.* at 199.  She makes this assumption because white employees get transferred and she cannot get a promotion. *Id.* at 199-200.

The plaintiff asked Jackson to transfer her to the Probate Judge's office in February, 2001. Jackson spoke to Christa Madden about it, and told the plaintiff she

---

[10]The issues concerning a computer were raised in the plaintiff's second EEOC Charge and apparently resolved then.

was too late.[11] *Id.* at 204. Thus, plaintiff never applied for the transfer in question. *Id.* at 207. After Rhonda Boyles transferred to the Probate Judge's office, the plaintiff asked for Boyles' old job. *Id.* She does not know what Boyles' old job title is, but knows that she did a lot of paperwork that required math. *Id.* Madden told her she could not have that job.[12] *Id.* at 207-208. The plaintiff was thereafter offered the job, but was told it entailed a cut in pay. *Id.* at 260.

The plaintiff also asserts that the job description for the PPA position was changed to cater to Leah Williams abilities. Plaintiff depo. at 330. The plaintiff assumes the county had to approve the job description. *Id.* at 332. However, the job descriptions are set by the State Revenue Department. Jackson depo. at 34, 97-101, 120.

Everyone in the Revenue Department is classified as "clerk one" except for the mapper, and appraiser. Jackson depo. at 30-31. While positions were at one time assigned pay scales, the Commission stopped using them. *Id.* at 36. Instead, each

---

[11]On her own, the plaintiff spoke to the Probate Judge about a transfer, who told her he did not think she'd like it in his office. Plaintiff depo. at 205. Jackson denies plaintiff ever asker her about transferring out of the Revenue Department. Jackson depo. at 163.

From the evidence submitted, Christa Madden's position in the Franklin County Courthouse is unclear.

[12]The plaintiff later testified that she requested the position available "in the Revenue Commissioner's Office as clerk one," which the plaintiff asserted was Boyles' old job. *Id.* at 250-251. The plaintiff thinks this may have been a promotion. *Id.* at 251. The plaintiff was already classified as a "clerk one." Jackson depo. at 30-31.

October, everyone gets a percentage increase. *Id.* Thus, the only jobs that pay more than the clerk one position are the mapper, appraiser, and Chief Clerk positions. *Id.* at 38. Kathy Morgan filled the mapper assistant job, but is classified as a "clerk one." *Id.* at 38-39. Jackson explained that, although the PPA position has traditionally paid more than a clerk, no document requires this. *Id.* at 41-42.

## II. STANDARD FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

**III. DISCUSSION**

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claims.

The plaintiff asserts that she did not receive the PPA position due to race discrimination and retaliation for her prior EEOC charges. The plaintiff has offered no direct proof of such discrimination. When evidence of discrimination is circumstantial in nature, the Supreme Court has fashioned a three prong test for focusing the court's examination of the evidence and allegations. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). Meeting this burden creates a presumption of discrimination. *Combs*, 106 F.3d at 1528.

The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Hall v. Alabama Ass'n of School Boards,* 326 F.3d 1157, 1166 (11th Cir.2003). The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939

F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590. 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The employee may satisfy this burden by persuading the court that the proffered reason for the employment decision is not worthy of belief. *Hall*, 326 F.3d at 1166.

In a "failure to promote case," the plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for the position for which she applied; (3) she was rejected for the position; and (4) after her rejection, the employer kept the position open or filled it with a person from outside the plaintiff's protected class. *Walker v. Mortham,* 158 F.3d 1177, 1186 (11th Cir.1998). The plaintiff here cannot show that someone outside her protected class was selected, at the position remains unfilled to date. Similarly, she cannot show she was not selected or rejected for the position. Rather, no action has been taken.

Even if the plaintiff could establish a prima facie case, the defendant has provided the court with a legitimate, non-discriminatory reason for not selecting the plaintiff. *See e.g. EEOC v. Reichhold Chemicals*, 988 F.2d 1564, 1570 (11th Cir.1993); *Brown v. American Honda Motor Co., Inc.*, 939 F.2d at 950. While the Revenue Commissioner's failing to show up for work is not an often cited reason for not filling positions, the court finds it is not a discriminatory reason.[13] This court need go no further in the failure to promote analysis. The court finds as a matter of law that the plaintiff cannot meet her prima facie burden of proof for this case to reach a jury on this issue. This claim shall be dismissed by separate order of the court.

The plaintiff also makes a claim that she was not promoted because she engaged in protected activity, namely making repeated EEOC claims. Again, to establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*. The plaintiff must show that she (1) engaged in Title VII protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected

[13]The court notes that the standard is usually stated in terms of "what might motivate a reasonable employer." *See e.g., Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2001). While the court is fundamentally convinced that Warhurst did not act as a "reasonable employer," the court cannot find this was due to any discriminatory motive. Rather, the evidence clearly establishes this was solely due to apathy. Nor can the court find that the placement of Warhurst in a position of authority was in any manner discrimination by the defendant County Commission, as the Commission has no control over who the voters of Franklin County choose to fill that position. This court may not second guess the wisdom of an employer's decisions as long as they are not racially motivated. *Id.*, citing *Combs*, 106 F.3d at 1541-43.

activity and the adverse employment action exists. *Brochu v. City of Riviera Beach,* 304 F.3d 1144, 1155 (11th Cir.2002); *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999).

While the filing of an EEOC complaint is clearly a protected activity, the plaintiff cannot show an adverse employment action. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000). Not all conduct taken by an employer which causes a negative affect on an employee constitutes adverse employment action. *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232 (11th Cir.2001). There must be "some threshold level of substantiality that must be met for unlawful discrimination to be cognizable."[14]

Here, the plaintiff has failed to establish any adverse change in the terms of her employment. She has not been terminated, her benefits have not been reduced, her responsibilities, if anything, have increased, her title has not changed and her benefits

---

[14]"This limitation is consistent with the basic principle that Title VII is ... neither a general civility code nor a statute making actionable for the 'ordinary tribulations of the workplace.'" *Davis,* 245 F.3d at 1239 (quoting *Gupta,* 212 F.3d at 587); *see also Wu v. Thomas,* 996 F.2d 271, 273-274 (11th Cir.1993) (noting that an adverse employment action does not result from every unkind act, even those without economic consequences).

have not changed.[15] The plaintiff cannot show that she has been treated differently than white employees, nor that similarly situated white employees were treated differently than she was. No one, regardless of race, has received the PPA position. Most recently, the plaintiff has been performing at least some of that job's duties. Additionally, while the plaintiff claims Jackson was the discriminating individual, Warhurst and the County Commission have failed to act on the vacancies.

The court finds further that the plaintiff cannot show a causal connection between the protected activity and the failure to promote for the reason discussed above, namely that no one has been promoted.

The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001); *citing Combs*, 106 F.3d at 1538. The plaintiff is unable to demonstrate any inconsistency or contradiction in the defendants' proffered legitimate reasons for not promoting the plaintiff. The plaintiff has offered only mere

---

[15]While the plaintiff argues that Williams' assumption of the PPA job duties deprived plaintiff of the opportunity for greater prestige and responsibility, the plaintiff makes clear in her deposition that she thought the job entailed more money, and that was why she wanted it. No evidence that the PPA job had any more prestige or responsibility than any other job is before this court. Interestingly, neither party has submitted into evidence the job descriptions for the positions at issue.

speculation that her EEOC complaints had any effect on the defendant's failure to promote her.

Based on a consideration of the above, this court finds that the plaintiff has failed to meet her burden of establishing that she was subjected to race discrimination or retaliation. However, even assuming this court found that the plaintiff had made out a *prima facie* case of race discrimination or retaliation, the court finds that the defendant established nondiscriminatory reasons for its actions. The plaintiff has not provided any evidence that the reason stated by the defendant for the failure to promote was pretextual. *See e.g., Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1564 (11th Cir.1995). As such, plaintiff has not met her burden to proceed past a motion for summary judgment.

The plaintiff argues that the position in question was, in reality, filled, and further, that she does not have to show it was filled to proceed past summary judgment. Plaintiff's brief in opposition, at 11. Unlike the cases on which she relies, the plaintiff here was not the sole qualified applicant for the position, and the defendant did not reorganize the Revenue Department to avoid promoting her. Rather, the only explanations given for the failure to fill the position in question are Warhurst's apathy toward the entire Revenue Department and the County Commission's implementation of a hiring freeze. No one disputes Jackson's attempts

to get Warhurst to interview for the PPA position and his failure to do so. The plaintiff admits Warhurst simply did not care if the work at the Revenue Department got done or not. The plaintiff does not accuse the County Commission or Warhurst of discrimination, but points her finger at Jackson.[16] The evidence is undisputed that Jackson could not hire. Similarly, unlike the facts of *Shoenfeld v. Babbitt*, 168 F.3d 1257 (11th Cir. 1999), where the plaintiff had evidence he did not receive the position because of his gender, the plaintiff here has no evidence she did not receive the position in question because white person was wanted.

Therefore, these claims shall be dismissed by separate order of the court.

**CONCLUSION**

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary

[16]While evidence does exist that neither Warhurst's nor Jackson's first choice for the position would have been plaintiff, no evidence has been presented this was because of the plaintiff's race. Rather, Jackson supported Williams, who had been more involved in the PPA position than anyone else, and Warhurst supported Morgan, because he believed she was underpaid in her current job. Both of those women earned less than the plaintiff. Plaintiff's argument that no further action was taken after she submitted her application is simply not supported by the evidence. *See* plaintiff's brief in opposition at 14. After plaintiff applied, the position was posted because Madden thought it had to be. Thereafter, Warhurst refused to setup interviews for anybody. Although the plaintiff claims Warhurst's foot dragging on filling the position is suspect, the plaintiff states all discriminatory and retaliatory actions came from Jackson. Plaintiff does state Warhurst discriminated against her by not filling the position, but this is based solely on the fact that the position was not filled. Plaintiff depo. at 190-191.

judgment is hereby **GRANTED**. The plaintiff's claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 24 day of September, 2000.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE